IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHUCK N. FREUND, JR.,

                         Plaintiff,                OPINION AND ORDER

    v.

                                                07-cv-632-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Chuck Freund seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the decision of the administrative law judge who denied his claim is not supported by substantial evidence because the judge did not fully develop the record, did not find his back pain to be a severe impairment, improperly rejected the opinions of a physician who examined him and erred in his determination of plaintiff's residual functional capacity.

1

I find that the administrative law judge fully developed the record, that he made the correct decision when he found plaintiff's back pain was not a severe impairment, that the medical evidence in the record supports the administrative law judge's rejection of some of the physician's opinions because these opinions were not supported by the medical evidence and that it was not necessary to consider these opinions in determining plaintiff's residual functional capacity.   For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on August 31, 1952.  AR 18.  He graduated from high school.  AR 173.  In 1974, he lost all of his fingers on his right hand in a punch press accident, but doctors were able to partially reattach his thumb.  Plaintiff's right hand was his dominant hand so he had to teach himself to do things with his left hand.  AR 118.  In spite of having limited use of his right hand, plaintiff was able to perform various types of jobs, including machine operator, material handler, assembler and construction helper.  AR 18.  He last worked as janitor for Manpower in 2004 after he was laid off from his job at Swing-n-Slide in Janesville, Wisconsin in March 2004.  AR 147, 174.

2

Plaintiff applied for Social Security Disability Benefits on May 26, 2004 and for Supplemental Security Income on May 6, 2004, alleging disability because of the 1974 amputation of the fingers of his right hand.  AR 21.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on January 30, 2007 before Administrative Law Judge Arthur Schneider in Madison, Wisconsin.  AR 169.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  He also heard testimony from a neutral vocational expert.  AR 169-204.  On March 5, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 13-20.  The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on September 7, 2007.  AR 4-6.

### B. <u>Medical Evidence</u>

The medical evidence in this case is limited.  In October 2003, plaintiff was seen twice at the Dean Riverview Clinic in Janesville, Wisconsin for lower back pain.  Dr. James Goodsett diagnosed plaintiff with low back strain, prescribed Vicodin for him and gave him samples of Vioxx.  Goodsett noted that plaintiff refused testing and physical therapy because he had no health insurance.  AR 116-17.

On August 3, 2004, Dr. Robert A. Penn examined plaintiff for the state disability agency. AR 118-119.  Dr. Penn found that plaintiff could push and pull with his right arm,

3

that he had some shoulder and elbow pain but no neck, back or leg pain and that, by his own report he did not take any regular medication.  AR 118. Dr. Penn believed that plaintiff would not have an easy time pursuing physical employment because of his right hand abnormality.  AR 119.

On August 9, 2004, state agency consulting physician Robert Callear completed a physical residual functional capacity assessment for plaintiff.  He noted that plaintiff had status post right transcarpal amputation,  AR 125, but he concluded that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand or walk 6 hours in an eight-hour day and sit six hours in an eight-hour day.  He found that plaintiff had limited pushing and pulling abilities in his upper extremities and that he was limited in gross manipulation, fine manipulation and feeling with his right hand.  AR 127-28.

On September 3, 2004, a physician at Health Net in Janesville, Wisconsin examined plaintiff and completed a report of incapacitation for him to support his wife's application to obtain food stamps and interim assistance from the Rock County Human Services Department.  The physician noted that because of the amputation of his right hand, plaintiff could perform moderate and light work but for only five to six hours each day.  AR 120-21. He also indicated that plaintiff could not lift, carry, push or pull with his right upper extremity.  AR 120.

On January 18, 2005, state agency consulting physician Dr. Pat Chan reviewed the record and affirmed Dr. Callear's August 9, 2004 assessment.  AR 132.

On January 3, 2007, plaintiff was evaluated by Dr. R. E. Huizenga at the Beloit Clinic in Beloit, Wisconsin.  Plaintiff reported that he had suffered amputation of all five digits of his right dominant hand in a punch press accident in 1974.  Plaintiff complained that he had experienced right shoulder pain on a daily basis for three or four years.  Plaintiff told Dr. Huizenga that he had had episodes of low back pain but that he had not had any significant back pain since he had been off work.  AR 147.  Dr. Huizenga ordered x-rays of plaintiff's right shoulder.  These x-rays were normal.  AR 146.  Dr. Huizenga diagnosed plaintiff with chronic right rotator cuff tendinitis because of positive impingement in his right shoulder. In his report, Dr. Huizenga noted that there was no swelling, deformity or atrophy of either of plaintiff's shoulders.  AR 147.

## C.  Hearing Testimony

At the hearing, plaintiff testified that his last job was as a janitor in 2004,  AR 174, and that he lived with his wife who received social security benefits of $749 a month.  He testified that he had served in the navy in Vietnam from 1970-1972. AR 177.  He testified that the fingers on his right hand were amputated in a work accident in 1974, AR 178, and

that since his right hand was his dominant hand he had had to learn to adapt with his left hand. AR 181.

Plaintiff said that had been seen twice for back pain in 2003 but declined testing because he did not have medical insurance. Although he was eligible for medical treatment from the Veterans Administration in Madison, he could not travel to Madison because he did not have money to buy gas or renew his license plates. AR 182.

Plaintiff testified that a doctor at Health Net completed a form for him to submit to Rock County Human Services to support his wife's application for food stamps. The doctor checked him over and indicated on the form that he could work three or four hours a day and lift 10 to 15 pounds with his left hand. AR 183. Plaintiff added that he had seen Dr. Penn in 2004 for a consultative examination and had seen Dr. Huizenga in January 2007 for shoulder pain. AR 184.

Plaintiff testified that because of his right shoulder pain he cannot mow the grass and can lift no more than 10 pound bags of dog food. AR 186. He testified that he had given up playing golf because of his right shoulder pain. AR 187. Plaintiff testified that he did the cooking, shopping and laundry for his wife and did crossword puzzles and jigsaw puzzles. AR 188-189. Plaintiff testified that he took aspirin only now and then for his shoulder pain. AR 191. He had a driver's license and drove a 1995 Saturn with a standard shift. AR 183-

194.  He testified that when he drove through town his shoulder ached and that he would have to get a car with automatic transmission eventually.  AR 194.

Jacquelyn Wenkman testified as a neutral vocational expert.  The administrative law judge described for Wenkman a hypothetical individual of plaintiff's age, education and work experience who could perform work that required lifting 50 pounds occasionally and 25 pounds frequently, standing or walking six hours in an eight-hour day and sitting six hours in an eight-hour day with limited pushing and pulling abilities in the upper extremities and limited gross manipulation, fine manipulation and feeling with his right hand. Wenkman testified that such an individual could perform the medium unskilled jobs that plaintiff had performed in the past, AR 198, as well as cleaning and janitorial jobs.  AR 199.

The administrative law judge then changed the hypothetical question to reduce the lifting capacity to 20 pounds occasionally and 10 pounds frequently.  Wenkman testified that such an individual could not perform plaintiff's past work but could perform light housekeeping and janitorial jobs and cafeteria attendant jobs.  The administrative law judge's third hypothetical question included a sit or stand option.  Wenkman testified that there would be general office work jobs that such an individual could perform.  AR 200.  The administrative law judge asked Wenkman whether there was work in the economy that the individual could perform if he could lift ten pounds occasionally, five pounds frequently, could work only six hours a day and would miss two days of work a month.  Wenkman

7

testified there was no work that such an individual could perform.  AR 201.  The administrative law judge then asked Wenkman whether her answers would change if the individual had no use whatsoever of the right arm.  Wenkman responded that a person limited to the use of only one hand could not perform any unskilled work because such a person could not keep up with the competitive pace of the jobs.  AR 201.

Plaintiff's attorney asked Wenkman about the occupational limitations on the form completed by the HealthNet Physician.  Wenkman testified that these limitations indicated that plaintiff could not use his right arm at all.  Wenkman testified that this limitation was consistent with the administrative law judge's final question to Wenkman.  AR 203.  The administrative law judge asked Wenkman to tell him whether there was any conflict between her testimony and the information included in the <u>Dictionary of Occupational Titles</u>.  AR 197.  Wenkman did not identify any.

### D.  <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity since February 14, 1974, the alleged onset date of plaintiff's disability.  AR 16.  At step two, relying on Dr. Huizenga's report, the administrative law judge found that plaintiff had severe impairments of status

post right transmetacarpal amputation and right shoulder tendinitis.  He noted that although plaintiff had sought medical attention for back pain twice in October 2003, he had refused diagnostic testing and physical therapy.  The administrative law judge found that plaintiff's back pain was not a severe impairment because there was no medical evidence that it would interfere significantly with his ability to perform work activity.  AR 16.  The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 16.

At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform work involving occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing or walking for six hours in an eight-hour work day, sitting for six hours in an eight-hour workday with no gross manipulation, fine manipulation or feeling with his right hand.  AR 16.  The administrative law judge found that although plaintiff's right hand was amputated, he had been able to perform work in the construction industry and at a factory after his injury and, in fact, did not quit work because of his impairment but was laid off.  He then noted that plaintiff did not take any regular medication and that his only income was his wife's supplemental security income payments.

The administrative law judge found that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.  The

9

administrative law judge gave substantial weight to the assessments of state agency physicians Callear and Chan, but explained that he gave plaintiff the benefit of the doubt by limiting him to light work rather than the medium work those doctors thought he could perform. The administrative law judge considered the form completed by the HealthNet physician who examined plaintiff on September 3, 2004. The administrative law judge indicated that he had incorporated the doctor's limitation concerning the use of the claimant's right arm into the residual functional capacity, but had rejected the opinion that plaintiff was limited to five to six hours of part-time work after finding it was unsupported by the objective medical evidence.

At step five, the administrative law judge found that plaintiff was not able to perform his past work as a machine operator, material handler, assembler, construction helper and janitor but that he could perform a significant number of other jobs in the economy, namely light janitor, housekeeper and cafeteria attendant jobs. In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles. AR 19.

OPINION

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

11

Plaintiff contends that the administrative law judge should not have rejected the report of the HealthNet physician who believed that plaintiff had no use of his right arm and could not sustain full time work.  As an initial matter, although the administrative law judge stated in his decision that he adopted the doctor's limitations concerning plaintiff's use of his right arm, there is a difference between the limitations noted by the doctor and the limitations found by the administrative law judge.  The doctor found that plaintiff could not lift, carry, push or pull with his right upper extremity.  The administrative law judge found that plaintiff could perform work involving no gross manipulation, fine manipulation or feeling with his right hand.  Thus, the administrative law judge was mistaken when he said that he had incorporated the doctor's limitations of plaintiff's use of his right arm into his residual functional capacity.  In fact, had he done so, he would have had to find plaintiff disabled in light of Wenkman's testimony that a person unable to use one arm could not perform unskilled work.

I note also that the administrative law judge did not include any limitation on pushing and pulling in his residual functional capacity finding.  However, his finding at step five indicated that he had relied on the vocational expert's testimony in response to a hypothetical question that included "limited pushing and pulling abilities" as one of the work restrictions.  Accordingly, his omission of this limitation from his written residual functional capacity finding appears to be an inadvertent error.

12

I agree with plaintiff that the administrative law judge did not explain clearly why he rejected the HealthNet doctor's opinion that plaintiff had no use of his right arm. I disagree, however, that the case must be remanded for this reason. Substantial evidence in the record supports the administrative law judge's residual functional capacity assessment. The HealthNet physician was not plaintiff's treating physician, so his opinions were not entitled to any more weight than the other medical opinions. 20 C.F.R. §§ 404.1527(d) and 416.927(d). State consulting physician Penn, who examined plaintiff, concluded that plaintiff could push and pull with his right arm and that he had no back pain. The state agency physicians Callear and Chan, who reviewed the medical evidence, found that plaintiff could do medium work with limited pushing and pulling abilities in his upper extremities and limited gross manipulation, fine manipulation and feeling in his right hand. In addition, plaintiff's testimony concerning his daily activities of housecleaning and cooking, together with driving a manual transmission car, support the conclusion that plaintiff had at least some use of his right arm. Even more significant, plaintiff had worked full time after his right hand was amputated, at jobs in both the construction industry and at a factory, until 2004. As the administrative law judge noted, plaintiff did not quit working because of impairment-related difficulties but because he was laid off. All of this evidence supports the administrative law judge's determination that plaintiff retained enough use of his  right arm to enable him to meet the lifting and carrying demands of light work. It also shows that the

13

administrative law judge did not err in disregarding the HealthNet doctor's opinion that plaintiff could work only part-time.

Plaintiff appears to concede that his hand impairment alone would not prevent him from working.  He argues that he is now more impaired than he was in 2004 because of back and shoulder pain.   However, the administrative law judge found that plaintiff's back pain was not a severe impairment, and the record clearly supports this conclusion.  In 2004 plaintiff told Dr. Penn that he had no back pain.  In 2007, just a month before the hearing, plaintiff told Dr. Huizenga that he had no significant back pain.  (In light of these reports, it is irrelevant that the administrative law judge appears to have improperly faulted plaintiff for not pursuing further treatment for his back strain in 2003.)

Further, there is no evidence in the record to support plaintiff's contention that his shoulder pain would prevent him from performing the activities allowed by the residual functional capacity.   Dr. Huizenga found that plaintiff's shoulder pain was the result of chronic right rotator cuff tendinitis.  He reported that the x-rays of plaintiff's right shoulder were normal and that there was no swelling, deformity or atrophy of either of plaintiff's shoulders.  As noted previously, plaintiff was able to drive using a stick shift and carry out household activities.  The administrative law judge reasonably accommodated plaintiff's shoulder problems by restricting him to light work requiring limited pushing and pulling.

Finally, plaintiff argues that the administrative law judge was obligated to more fully develop the record and obtain additional medical evidence regarding his complaint of shoulder pain.  He argues that because Dr. Penn's examination was performed on August 3, 2004 and the hearing was not held until January 30, 2007, the administrative law judge or the Social Security Administration should have obtained a new medical evaluation to determine plaintiff's updated medical condition at the time of the hearing.

I disagree.  The administrative law judge must consult a medical expert only if he concludes that the evidence before him is insufficient to make a determination.  20 C.F.R. § 416.927(f)(2)(iii) (administrative law judge may ask for opinion from medical expert on nature and severity of impairment and on whether impairment equals listed impairment).  In this case the administrative law judge was not required to consult a medical expert or seek a medical evaluation of plaintiff because there was sufficient evidence in the record to determine plaintiff's condition at the time of the hearing.  Dr. Huizenga examined plaintiff on January 3, 2007, only one month before the hearing.  His report provided credible, contemporaneous evidence of plaintiff's condition making it reasonable for the administrative law judge to conclude that there was no need for any additional medical evaluation.

15

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff Chuck N. Freund, Jr.'s appeal is DISMISSED.

The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of May, 2008.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge